# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| Plaintiff | : | Case No.: 2:14-CR-127(13) |
| vs. | : | Judge Marbley |
| **DASHAWN MAURICE SMITH** | : | |
| Defendant. | : | |

## DEFENDANT DASHAWN SMITH'S SENTENCING MEMORANDUM

Now comes Defendant, DaShawn Smith, by and through his undersigned counsel in connection with the sentencing of the Defendant and hereby submits this Sentencing Memorandum. The Defendant respectfully requests the Court accept the recommendation of the Presentence Report and the advisory sentencing guidelines, as well the range reflected in the Plea Agreement, and sentence him to 360 months. The Defendant agrees to the award of restitution and asks that the total be shared evenly by all four individuals involved.

Respectfully submitted,

/s/ Gregory S. Peterson
Gregory S. Peterson (0061915)
Zachary M. Swisher (0076288)
PETERSON CONNERS SWISHER & PEER, LLP
Two Miranova, Suite 330
Columbus, OH 43215
Telephone: (614) 365-7000
Facsimile: (614) 220-0197
E-mail:gpeterson@petersonconners.com
     zswisher@petersonconnners.com
*Co-Counsel for Defendant DaShawn M. Smith*

## MEMORANDAUM IN SUPPORT

    **I.   Introduction**

The Defendant is before this Honorable Court to be sentenced following his guilty plea, which he entered on September 22, 2016, to Count one of the Superseding Indictment charging him with Racketeering, in violation of 18 U.S.C. 1962(c). Defendant understands that his guilty plea to Count One included his admission to his involvement in the acts outlined in that Count One including Overt Acts 13, 14 and 53.

The Defendant respectfully submits that the purpose of sentencing as set forth by the United States Sentencing Guidelines, as well as the equally important goals of retribution, deterrence, incapacitation and rehabilitation, is sufficiently served by the imposition of the recommended sentence of 360 months. The Defendant submits that when the multitude of relevant factors is given appropriate consideration by the Court, including the plea agreement between the parties ("Agreement"), a period of 360 months incarceration is warranted. (*see* PSR dated December 21, 2016, *incorporated by reference herein*). The Defendant respectfully suggests that this period of incarceration is the appropriate sentence in this matter and will satisfy all of the goals of sentencing.

    **II.   The Plea Agreement**

At the change of plea hearing, the government presented to the Court the plea agreement entered into between the parties. The plea agreement reflects the relevant conduct attributable to the Defendant including all identified overt acts. The plea agreement includes a sentencing range of 360-420 months. The Defendant has no outstanding objections to the PSR and accepts the guideline range and criminal history category. The Defendant respectfully requests the Court accept the terms of plea agreement as well as the recommendation of the PSR and sentence the

Defendant to 360 months, within the agreed upon range, for the reasons more fully set forth below.

### III. Sentencing Post-Booker

The United States Supreme Court held in *U.S. v. Booker*, 543 U.S. 220 (2005) that the Federal Sentencing Reform Act of 1984 was inconsistent with a defendant's rights under the Sixth Amendment to the Constitution. The Supreme Court struck down mandatory application making the guidelines effectively advisory and requiring district courts to exercise significant discretion in determining appropriate sentences. Specifically, the Supreme Court directed district courts to examine all of the factors under 18 U.S.C. 3553(a), which has the primary directive of imposing a sentence, "sufficient but not greater than necessary." Although a sentence within the applicable guideline range is presumptively reasonable, a sentence below the guideline range is not presumptively unreasonable. *U.S. v. Foreman* 436 F. 3d 638, 644 (6th Cir. 2006).

The Defendant submits that when the Court takes into consideration the wide variety of information relevant to a just determination of sentence, the sentencing factors outlined in 18 U.S.C. 3553(a) a sentence of 360 months is warranted.

### IV. Statutory Sentencing Factors of 18 U.S.C. 3553(a)

In determining the appropriate sentence to impose upon an offender, the Court is to follow the structure as set forth in 18 U.S.C. 3553(a).

#### A. Nature and Circumstances of the Offense 3553(a)(1)

When consideration is given to the enormity not only of the criminal enterprise organized and operated by the Short North Posse, but also to the superseding indictment and large number of overt acts defining this prosecution, DaShawn Smith had a relatively small role. He is uninvolved and unfamiliar with the vast majority of the co-defendants and the wide ranging allegations against them. Indeed, although the allegations against the Defendant are extremely

3

serious, his involvement in the broader conspiracy is somewhat limited. With the respect to the homicide of Shane McCuen, there is no allegation that the Defendant used or even possessed a firearm. Finally, the Defendant has accepted responsibility as reflected in paragraph 81 of the PSR (page 14), "[t]he Defendant provided a statement wherein he admitted his involvement in the instant offense. The Defendant acknowledges the conduct outlined in the statement of facts was true and accurate."

### B. History and Character of DaShawn Smith 3553(a)(1)

This Honorable Court is to consider the history and personal characteristics of the Defendant. *U.S. v. Nellum*, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 2005). DaShawn is a low functioning, product of a broken home, void of any parental involvement or guidance. DaShawn's documented limited intelligence, poor academic performance, his sexual and substance abuse and his history of physical complications are relevant and important for the Court's consideration. Indeed, the Government recognizes and acknowledges the challenges and difficulties experienced by the Defendant beginning with his childhood.

The Defendant's personal characteristics are thoroughly set forth in Part C of the PSR, however, many aspects of DaShawn's childhood warrant mentioning. The relationship between DaShawn's parents was plagued by violence, crime and his father's infidelity. Eventually, DaShawn's father had nine children by seven different women. Furthermore, his father was also deeply involved in the drug trade. He was incarcerated in Columbus, Ohio on possession charges and served time in an Oklahoma prison for trafficking. During this time, the family was often the subject of investigations by Franklin County Children Services which substantiated abuse.

While DaShawn's father was serving time in prison, his mother moved the family from the small town of Zanesville, Ohio to Columbus, Ohio. She believed the move would offer better

4

opportunities for her to find work. Due to Lindsey's absence, Danica was a single mother trying to provide for her children. However, finding work meant leaving her children alone at home. DaShawn became responsible for himself and his younger sister.

Although Danica's decision to move the family to Columbus was well intended, the Short North neighborhood where she chose to move her children was violent and drug ridden. The Short North was and is known for its prostitution, gangs, violence, and drugs. Left alone to fend for themselves, DaShawn and his sister faced the violence on a daily basis. The reality of their fear was quite real on one evening when a gunshot penetrated their home through the kitchen as they sat in the next room.

DaShawn's mother moved the family from neighborhood to neighborhood trying to find a better place. But no matter where they lived they were not able to escape the same violent environment. They moved so often, they became transient. DaShawn had moved six times by the time he was 12 years old. DaShawn was never grounded in any home, in any school, or in any family situation. With every move came a new school, sometimes two different schools within the same year. By his junior year, DaShawn had attended thirteen different schools. Details of academic performance are set forth more fully below.

Moving from school to school would prove difficult for any child, but even more so for one who was already academically challenged. Learning did not come easily for DaShawn and he required the services of a tutor. He had already repeated the first grade due to a learning disability. Other children who picked on him for being in the special needs class only made things worse for him. On occasion, this led to fights in school which resulted in a suspension or expulsion. Eventually, in his junior year, DaShawn gave up and quit school. He would never return to school or graduate.

The violence of his existence, both inside the home and out, was the norm. With no family support network, low intellectual skills, no friends, and academic failure, a recipe for disaster was methodically being put together. Guns, drugs and violence were not strangers to DaShawn. In fact, they were a constant and unavoidable fact of life. Many of the choices he had to make in his life were misguided, but necessary for him to survive. As intellectually limited as DaShawn was, and being completely abandoned by his parents, he did not make the right choices. Despite this reality, DaShawn is a gentle man. He is a loving father to his children whom he loves dearly and cares for as he can. The children's mothers will attest to his love and concern for his children and his gentleness towards them as mothers.

Dr. James Eisenberg evaluated DaShawn in preparation for the Department of Justice Authorization hearing. Dr. Eisenberg's evaluation utilizing the WAIS-IV tool established DaShawn's IQ at 76, placing him in the 5th percentile. DaShawn's IQ in specific categories ranged from a high of 84 for the Perceptual Reasoning Index to a low of 70 in Verbal Comprehension Index. Dr. Eisenberg concluded that this places DaShawn at a borderline intelligence level. A portion of DaShawn's test places him in the 2nd percentile for some of the intelligence categories.

Additionally, sexual abuse suffered by defendants has always been a significant factor in considering an individual's culpability and warranted sentences when it results or contributes to future criminal behavior. Indeed, the United States Sentencing Guidelines account for suspected or reported sexual abuse of a defendant in U.S.S.G. §5H1.3. This section of the guidelines account for the affect abuse can have on the mental and/or emotional condition of a defendant and allows for a downward departure for the purpose of sentencing.

DaShawn disclosed during the course of the mitigation investigation as well as during the PSR interview, that at the age of 10 he was repeatedly sexually abused by an adult family

acquaintance. This is indicative of the circumstances that surrounded DaShawn's upbringing. His early childhood years were chaotic, without structure, protection or guidance.

Finally, DaShawn began abusing alcohol at the age of 14. His abuse of alcohol became more significant between ages 15 and 16 when he began using other substances such as ecstasy, pain pills, and marijuana. By age 15 he was drinking heavily with a maternal uncle who also assisted him in becoming addicted to ecstasy. These early addictions directly lead to many of his legal troubles. DaShawn is an alcoholic. Before his incarceration he drank every day. Given that this started at an early age, coupled with his lack of real parental involvement, lack of supervision, and his negative environment, it is not surprising that these issues exist.

In addition to the psychological issues outlined above, DaShawn's overall physical health from an early point in his life is also significant. DaShawn's mother reports that he has experienced seizures since the age of 6. DaShawn has disclosed that he remembers them occurring regularly from the age of 10.

### C. The Need for the Sentenced Imposed 3553(a)(2)

Section 3553(a)(2) sets forth justifications for the sentences which are to be imposed, including reflection of the seriousness of the offense, promoting respect for the law, providing punishment, deterring criminal conduct, protecting the public and providing correctional treatment to the defendant. The statutory directive of this Court is to determine a sentence, *which is not greater than necessary* to accomplish these sentencing objectives.

Although the imposition of a significant period of incarceration is inevitable, the goals of reflecting the seriousness of the offense, promoting respect for the law, punishment, general and specific deterrence, protection of the public and providing treatment for the Defendant are accomplished by a 360 month sentence.

7

### D. Need to avoid unwarranted Sentence Disparities 3553(a)(6)

Sentencing courts shall consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *U.S. v. Phinazee*, 515 F.3d 511 (6th Cir. 2008). An unjustified disparity between sentences of co-defendants should only be considered as a factor for departure if it "actually creates a disparity between the length of the defendant's sentence and all other similar sentences imposed nationwide." The endeavor to avoid sentencing disparity applies not only to defendants in other cases that may be similarly situated but to the co-defendants in this matter that have already had their sentences determined by this Honorable Court. The Court is very familiar with the extensive factual allegations contained in the Superseding Indictment as well as the sentences imposed upon co-defendants. When consideration is given to the Defendant's role in the instant offense and the level of involvement as compared to co-defendants and the sentences imposed in this case, as well as across the country for similar conduct, the need to avoid unwarranted sentencing disparities justifies this Court's imposition of a sentence of 360 months.

### V. Sentencing Recommendation

For the foregoing reasons, the Defendant respectfully requests this Court to impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. 3553(a) and consistent with the co-defendants previously sentenced for more egregious conduct. The PSR recommends a sentence of 360 months, which is within the range set forth in the Plea Agreement and reasonable and justified under the circumstances.

Respectfully submitted,


/s/   Gregory S. Peterson
Gregory S. Peterson (0061915)
Zachary M. Swisher (0076288)
PETERSON CONNERS SWISHER & PEER, LLP
Two Miranova, Suite 330
Columbus, OH  43215
Telephone: (614) 365-7000
Facsimile:  (614) 220-0197
E-mail:gpeterson@petersonconners.com
          zswisher@petersonconnners.com
*Co-Counsel for Defendant DaShawn M. Smith*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing was filed with the Court using the CM/ECF system electronically this 30th day of January, 2017, and served using the CM/ECF system via e-mail upon the United States Attorney's Office.


/s/ Gregory S. Peterson
Gregory S. Peterson (0061915)