IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:14-CR-0127(13) |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | |
| DASHAWN SMITH, | : | |
| | : | |
| Defendant. | : | |

**OPINION & ORDER**

This matter is before this Court on Defendant DaShawn Smith's Pro Se Motion for Compassionate Release (ECF No. 1780) and Motion for Extension of Time to File a Reply (ECF No. 1797). For the reasons that follow, Defendant's Motion for Extension of Time is **GRANTED** (ECF No. 1797), and his Motion for Compassionate Release is **DENIED** (ECF No. 1780).

**I. BACKGROUND**

In September 2016, Mr. Smith pled guilty to Conspiracy to Commit Racketeering, in violation of 18 U.S.C. § 1962(d), for his role in the murder of Shane McCuen during a 2008 attempted drug robbery. (ECF Nos. 1296; 1793 at 1–2). Mr. Smith identified Mr. McCuen as a target for robbery and participated in stealing money, drugs and firearms from Mr. McCuen after one of Mr. Smith's co-conspirators shot Mr. McCuen. (ECF No. 1793 at 2). Mr. McCuen later died from his injuries. (*Id.*). Mr. Smith's Presentence Investigation Report also included details about another shooting, drug possession, illegal firearms use, and armed robbery. (*Id.*). The Rule 11(c)(1)(C) binding plea agreement agreed to a term of imprisonment of 360–420 months, or 30–35 years. (*Id.*). This Court sentenced Mr. Smith to 360 months, or 30 years. (*Id.*). Mr. Smith's scheduled release date is December 18, 2039. (*Id.*).

On June 6, 2022, Mr. Smith filed a *pro se* Motion for Compassionate Release seeking a sentence reduction from 360 months (30 years) to 240 months (20 years). (ECF Nos. 1780; 1785-1 at 1, 7). Mr. Smith alleges that there are extraordinary and compelling reasons for his release: (1) the fact that the mother of his son lost custody of the child to Children's Services due to mental health and drug abuse issues and Mr. Smith is the only caregiver available; (2) the COVID-19 pandemic; (3) the fact that he has participated actively in rehabilitation education courses, and helped found and lead a men's mentorship program in the prison; and (4) that the circumstances of his sentencing were unique. (ECF Nos. 1780 at 3–5; 1785-1; 1786). On June 27, 2023, this Court also received a Proposed Release Plan and other supporting documentation that were filed under seal (ECF No. 1785).

The Government alleges that Mr. Smith's Bureau of Prisons ("BOP") record indicates that he was vaccinated for COVID-19 in March and April 2021 and that he failed to plead specific instances of potential harm. (ECF No. 1793 at 2). The Government maintains that despite Mr. Smith's admirable efforts to rehabilitate, the past, violent harms he caused and the need to deter Mr. Smith from similar crimes in the future outweigh the challenges faced by his family. (*Id.* at 5–6). Finally, the Government maintains that a review of the 18 U.S.C. § 3553(a) sentencing factors establishes that Mr. Smith's original sentence was reasonable and appropriate. (*Id.* at 6).

On August 5, 2022, Mr. Smith filed a Motion for Extension of Time to File a Reply, citing the prison's COVID-19 restrictions which limited his ability to submit a substantive reply. (ECF No. 1797). On August 29, 2022, Mr. Smith filed a Reply in which he details the effort he invested in his rehabilitation by creating mentorship programming for other prisoners and facilitating resolution of racial division within the prison. Mr. Smith acknowledges the harm he caused and commits his terms of imprisonment to "the memory of Shane Allen McCuen." (ECF No. 1802).

## II. STANDARD OF REVIEW

A sentencing court "may reduce" a defendant's "term of imprisonment" pursuant to the "compassionate release" provision of 18 U.S.C. § 3582(c) when the defendant exhausts administrative rights and shows "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). A district court has discretion to grant or deny such a petition, but the court must "supply specific factual reasons for [its] compassionate release decisions." *United States v. Jones*, 980 F.3d 1098, 1101–02 (6th Cir. 2020).

The Sixth Circuit has set forth a three-step framework for evaluating motions for compassionate release. *Id*. at 1106–08. After clearing the threshold requirement of exhaustion, *see United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020), the analysis proceeds as follows:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[ ]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added) . . . . At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1107–08 (alterations original). Each step is a mandatory prerequisite to attaining compassionate release, so a defendant's failure to satisfy any step compels denial of the motion. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others. Of course, in granting a compassionate-release motion, district courts must address all three steps." (internal citations omitted)).

3

### III.  ANALYSIS

#### A.  Motion for Extension of Time to Reply

This Court **GRANTS** Defendant's Motion for an Extension of Time retroactively given the challenges COVID-19 restrictions imposed on Defendant. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (holding that "incidental to the power inherent in every court" is the ability "to control the disposition of . . . cases on its docket"). As such, this Court considers its contents herein.

#### B.  Motion for Compassionate Release by Sentence Reduction

##### 1.  *Administrative Exhaustion*

Administrative exhaustion is a threshold requirement in any motion for compassionate release. This condition is satisfied when a defendant "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a [compassionate release] motion on the defendant's behalf or [upon] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is not jurisdictional, but rather "a claim-processing rule" that "bind[s] the courts only when properly asserted and not forfeited." *Alam*, 960 F.3d, at 833. Mr. Smith submitted a request for compassionate release to the Warden on March 19, 2022 and never received a response. As such, the Court may begin the three-step inquiry in *Jones*.

##### 2.  *Extraordinary and Compelling Reasons*

###### a.  *Family Circumstances*

First, Mr. Smith alleges that his son has been placed in the custody of Children's Services due to the incapacitation of the mother of his son, leaving Mr. Smith as the only available caretaker. Mr. Smith's desire to care for his son, while certainly commendable, "is also not an extraordinary and compelling reason meriting his early release." *United States v. Hill*, Case No. 1:20CR0425,

2022 WL 122639, at *2 (N.D. Ohio Jan. 13, 2022). A prisoner's inability to care for his or her child is, unfortunately, a "problem faced by many convicted defendants." *Id.; accord United States v. Kibby*, No. 2:19-CR-179, 2021 WL 2009568, at *3 (S.D. Ohio May 20, 2021). In that regard, the placement of Mr. Smith's child into foster care—as upsetting as it may be—arguably does not, by itself, constitute an "extraordinary" reason to grant him early release. *See United States v. Altiery*, No. 2:13-CR-00041-1-JRG, 2021 WL 5407671, at *6 (E.D. Tenn. Nov. 18, 2021); *Kibby*, 2021 WL 2009568, at *3. Even if it did, it remains unclear to this Court whether Mr. Smith would be legally or logistically able to regain custody of his son, or that Mr. Smith's son remains in foster care. *United States v. Caldwell*, No. 2:18-CR-248, 2022 WL 3151892, at *3 (S.D. Ohio Aug. 8, 2022) (Sargus, J.) (finding placement of child in foster care was not extraordinary or compelling reason warranting compassionate release).

Further, Mr. Smith indicates that his son's siblings have been placed in the custody of family but does not explain why his son was not or could not be placed in the custody of other family members. *See e.g., United States v. Vela-Salinas*, No. 3:11-CR-00083-19, 2022 WL 391490, at *5 (M.D. Tenn. Feb. 8, 2022) (denying a motion for compassionate release where petitioner failed to explain why petitioner's two adult children were unable to care for petitioner's minor child). Therefore, the Court finds that Defendant has not presented "extraordinary and compelling reasons" to justify compassionate release on this basis.

### b. COVID-19 Pandemic

Next, Mr. Smith cites the COVID-19 pandemic as providing the "extraordinary and compelling reasons" for compassionate release. Before vaccines were widely available, this Court found, like many others, that the heightened risk of rapid transmission in prison facilities could constitute an "extraordinary and compelling" circumstance for inmates whose age or health left

them particularly vulnerable to severe illness. *See, e.g.*, *United States v. Crawford*, No. 2:18-cr-00075-3, 2020 WL 3869480, at *2 (S.D. Ohio July 9, 2020) (granting compassionate release to older inmate with diabetes and high blood pressure); *United States v. Glassburn*, No. 2:18-cr-00075-2, 2020 WL 5366113, at *2 (S.D. Ohio Sept. 8, 2020) (finding inmate's chronic obstructive pulmonary disease ("COPD") was an "extraordinary and compelling" reason but denying compassionate release because inmate would pose a danger to the community).

More recently, however, the Sixth Circuit has narrowed the set of circumstances where risks associated with COVID-19 may be considered "extraordinary and compelling reasons" for compassionate release. Noting the widespread availability of vaccines by mid-2021, the Sixth Circuit wrote that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction," though the court did not foreclose relief for "a prisoner who is 'unable to receive or benefit from a vaccine.'" *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) and *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021)). In January 2022, the Sixth Circuit reiterated that given the availability of COVID-19 vaccines, the pandemic itself would not be considered an "extraordinary and compelling" reason, "absent extenuating circumstances." *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022) (citing *Lemons*, 15 F.4th at 751).

Mr. Smith fails to provide any detail to support his assertion that the COVID-19 pandemic constitutes an extraordinary and compelling reason for his sentence reduction other than to raise the issue generally. First, it appears that Defendant is vaccinated. (ECF No. 1793 at 2). Vaccines have proven effective at preventing severe illness and death from COVID-19[1], which is mitigated

---

[1] *Do COVID-19 Vaccines Protect Against the Variants?*, MAYO CLINIC (Mar. 4, 2022), https://www.mayoclinic.org/coronavirus-covid-19/covid-variant-vaccine (accessed Apr. 12, 2022).

further by the availability of vaccine boosters,[2] including in the BOP.[3] Even if Mr. Smith was not vaccinated, failure to care for his health concerns would be found only to meet the "extraordinary and compelling" reason requirement in unique circumstances. *See, e.g.*, *United States v. Mellon*, No. 2:20-cr-140, 2022 WL 2704151, at *1 (S.D. Ohio July 12, 2022) (finding the "extraordinary and compelling element" was met where a defendant's kidney disease required "constant dialysis" and "necessitated surgeries and external evaluations at a local hospital"). Therefore, this Court finds that Defendant has not presented "extraordinary and compelling reasons" to justify compassionate release on this basis.

c. *Rehabilitation and Circumstances of Sentencing*

Finally, Defendant points to his rehabilitative efforts as an extraordinary and compelling reason for sentence reduction. Mr. Smith engages in educational programs, helped found and lead a male mentorship program for other prisoners, and has not had a behavioral infraction since the beginning of his prison term. (ECF No. 1785-1 at 7–8). While the Court encourages those efforts, "rehabilitation alone is typically not enough to justify compassionate release." *United States v. Occhipinti*, 2021 WL 1549991, at *3 (N.D. Ohio Apr. 20, 2021) (citing *United States v. Ruffin*, 978 F.3d 1000, 1009 (6th Cir. 2020)).

Mr. Smith makes general reference to the "devastating affects of his upbringing," (ECF No. 1802 at 6), but provides no further detail as to how those circumstances impacted his actions or how the impact of those circumstances have changed from the time of his sentencing to now. Therefore, the Court finds that Defendant has not presented any "extraordinary and compelling reasons" to justify compassionate release.

---

[2] *COVID-19 Vaccine Boosters*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 1, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/booster-shot.html (accessed Apr. 12, 2022)
[3] *COVID-19 Vaccine Implementation*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus (accessed Apr. 12, 2022) ("Inmates have also been offered booster shots in accordance with CDC guidance.").

*3. Applicable Policy Statements and Sentencing Factors*

In *Jones*, the Sixth Circuit clarified that "in cases where incarcerated persons file their own motions in district court for compassionate release," as opposed to the BOP moving on the person's behalf, the policy statement set out in U.S.S.G. § 1B1.13 is no longer considered applicable. *Jones*, 980 F.3d at 1101–02. Accordingly, *Jones* instructs that courts "may skip step two" in those instances "and have full discretion to define 'extraordinary and compelling' without consulting the policy statement." *Id*. at 1111. Because Defendant's claim fails on prong one of the *Jones* test and because he brings this Motion on his own behalf, the Court need not refer to the policy statement.

This brings the Court to the final step of the *Jones* framework. Because the Court fully considered said factors when it imposed its sentence, and because the mandatory element of "extraordinary and compelling reasons" is lacking, the Court terminates its inquiry without reaching this third step of analysis. *Cf. Traylor*, 16 F.4th at 487 ("[B]ecause the district court determined that there was no extraordinary and compelling reason to grant Traylor's motion, it also did not abuse its discretion by denying the motion without addressing whether the 18 U.S.C. § 3553(a) factors support a sentence reduction.").

## IV.  CONCLUSION

For the reasons thus stated, Defendant's Motion for Compassionate Releases is **DENIED** (ECF No. 1780). Defendant's Motion for Extension of Time is **GRANTED** retroactively. (ECF No. 1797).

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: May 23, 2023**